**UNIVERSAL C. I. T. CREDIT CORPORATION, Respondent,**

v.

**Ralph W. TATRO, Appellant.**

**No. 24543.**

Kansas City Court of Appeals.

Missouri.

June 5, 1967.

Richard L. White, Kansas City, for appellant.

William C. Paxton, Independence, for respondent.

CROSS, Judge.

Defendant has appealed from an adverse judgment of the circuit court awarding plaintiff loan company $1,437.44 as actual damages sustained by reason of defendant's alleged fraud practiced to procure a loan, and punitive damages in the amount of $500.00.

The case was tried upon the theory pleaded by plaintiff in its second amended petition to the effect that defendant went to plaintiff's office and applied for a loan; that as a condition precedent to granting the loan plaintiff required, in addition to defendant's own signature, that he obtain the signature of his wife, Billie Tatro, on certain necessary loan papers, including a promissory note, and deliver those documents to plaintiff; that plaintiff furnished the necessary loan papers to defendant who took them home with him from the loan office for that purpose; that defendant later returned and delivered the papers to plaintiff purportedly bearing the signature of Billie Tatro and affixed thereto his own signature, whereupon he received from plaintiff the monies called for by the promissory note; that in truth and fact the purported signatures of Billie Tatro on the loan documents were not genuine, but were forgeries; that defendant delivered the promissory note and accompanying loan papers to plaintiff with knowledge that the purported signatures of Billie Tatro thereon were forgeries; that he "wrongfully, maliciously and intentionally submitted them to the plaintiff to induce plaintiff to loan said defendant, Ralph W. Tatro, this money which was in fact loaned by said plaintiff all to their loss".

Defendant Ralph W. Tatro testified both as a witness called by plaintiff for cross examination and on his own behalf. The trial court itself subjected him to a lengthy, critical examination. The substance of his testimony is here set out: Sometime prior to October 3, 1961, defendant and Billie Tatro, who at that time was, but no longer is his wife, desiring to purchase a carpet, went to the office of plaintiff to apply for a loan for that purpose. They were informed by plaintiff the loan would be forthcoming. Later, on or about October 3, 1961, defendant returned to plaintiff's office, unaccompanied by his wife, to complete the loan arrangements. Plaintiff wanted defendant's wife present to complete the loan. A "gentleman" in plaintiff's office, on its behalf, called and talked to Billie Tatro at her place of employment and learned she was unable to leave her work and come to

the loan office. Then plaintiff's representative agreed that defendant could sign the papers and take them home with him for his wife to sign and informed defendant that when he brought them back signed he would receive "the money represented by this loan". The papers were given to him in an envelope. He took them home and presented them to Billie Tatro for her signature, but she informed him she was leaving the house at that time but would sign them later and give them to him next morning. The next morning she threw "the papers" on a table with the statement, "Here's your papers back". The papers were still in the envelope. Defendant didn't see her sign the papers, didn't look at them after he picked them up, or otherwise identify her signature before returning them to plaintiff's office. He claimed he had already signed them and never saw them again until produced in court. He "picked up the envelope, took it down and gave it to the Universal C. I. T. Company". He "guessed" that somebody there must have looked at the papers because "they give me the check". During cross-examination of defendant, the loan papers were identified as Plaintiff's Exhibit 1, the promissory note (and chattel mortgage) in the principal sum of $2040.00, dated October 3, 1961; Plaintiff's Exhibit 2, a carbon copy of Exhibit 1; Plaintiff's Exhibit 3, a financial statement dated October 3, 1961; Plaintiff's Exhibit 4, a list of property owned by borrower dated October 3, 1961. Defendant admitted he had signed all four documents. Concerning the purported signatures of Billie Tatro he testified:

"Q. Now, are you acquainted with the signature of your wife? A. Yes.

Q. And is it your testimony that the signature as it appears on these instruments, is the signature of your wife as you know it to be? A. No, I wouldn't say that. It looks more like a child's signature to me, unless she was drunk at the time she signed it.

Q. In other words, it really doesn't look like her signature? A. Right.

Q. Well, why did you tender it back to Universal C. I. T. as her signature? A. I never even looked at it, they were in the enevelope and I took it down there and they give me the check for it. From the time I took those home until the time it come up in court before, I had never seen those papers again.

Q. You are not denying that they gave you the papers and said to get your wife's signature on them, and you brought these papers back with this signature on them, but this signature doesn't look like your wife's signature, and they give you the money? A. Right".

William Vornold, plaintiff's branch manager of Universal C. I. T. testified that defendant came to its office on October 3, 1961, in the early part of the morning, and arranged for a loan to buy a carpet. No person accompanied him. Necessary loan papers were given to him with accompanying instructions that he would have to take the papers out for his wife to sign and return them, and that after the signatures were affixed the loan would be completed, and he could have his check. Defendant didn't sign the papers at that time. He left the office, taking the documents with him, and brought them back late in the afternoon of the same day. He signed them after turning them over to plaintiff. Vornold stated they were not out of the office overnight. He further stated that Mr. and Mrs. Tatro did not come to plaintiff's office and discuss the October 3d loan at any time prior to that date. The witness also testified that it was normal practice to send loan papers out for people to sign if they have a previous account with the plaintiff because you can verify the signature. Plaintiff had a previous account with Mrs. Tatro. In May, 1962, Vornold had a "discussion with him (Tatro) about the papers". At that time Tatro said they were signed when he

picked them up at home to bring back to the loan office, but that he didn't know who signed them. In July, 1962, Tatro was in the loan office discussing the transaction. On that occasion he stated that "it was her signature" (on the loan papers).

Billie Tatro (Pinet), defendant's former wife, was called as a witness by plaintiff. She denied having signed any of the loan documents (Plaintiff's Exhibits 1, 2, 3 and 4), denied that she had ever signed any credit application, chattel mortgage, or any kind of note with Mr. Tatro to Universal C. I. T., and denied that she had ever been in its office.

Defendant was adjudged a bankrupt on a date undisclosed by the record but subsequent to October 3, 1961, and thereafter, on July 11, 1963, received a final discharge in bankruptcy. Defendant had listed in his bankruptcy schedule of liabilities the October 3, 1961 promissory note payable to plaintiff, which defendant had himself admittedly executed. It was stipulated by the parties that the unpaid principal balance of that note was in the amount of $1,437.-20.

At the conclusion of the evidence it was stipulated by and between the parties that the court submit to a handwriting expert the handwritings in question claimed to be the signatures of Billie Tatro, together with agreed authentic specimens of her signature, to determine whether the purported signatures on the former were her true signatures. Pursuant to this stipulation the trial court designated Mr. R. H. Burnup, a certified graphoanalyst, as a handwriting expert to examine the signatures and render his opinion on the disputed question. In his report to the court, duly filed, he expressed his opinion that the writings on plaintiff's Exhibits Nos. 1, 2, 3 and 4 purporting to be the signatures of Billie Tatro are not, in fact, her signatures.

The trial court made findings of fact as follows:

"That Ralph W. Tatro applied to plaintiff for a total loan of $1,655.32, including interest; that said promissory note was dated October 3, 1961. That as a condition precedent to the loan said Ralph W. Tatro agreed to have his wife, Billie Tatro, sign this promissory note and took it from the plaintiff's office for this purpose; that he brought it back to plaintiff purportedly signed by Billie Tatro, but in fact, Ralph W. Tatro knew that it was not her signature and knowingly tendered this false signature as being genuine to plaintiff to secure said loan with intent that it should be acted upon by plaintiff in a manner reasonably contemplated by said defendant by paying out the amount of the proposed loan; that plaintiff being ignorant of the fact that the signature purportedly being that of Billie Tatro was false, relied on its truth and defendant's representations, having a right to rely thereon and that plaintiff suffered consequent and proximate injury in the amount of $1,437.44, the unpaid balance of said promissory note.

II

"That Defendant Ralph W. Tatro received his final discharge in bankruptcy July 11, 1963, in the United States District Court for the Western District of Missouri under case #27925; that plaintiff's debt was listed in said defendant's schedule therein and that plaintiff received proper notice thereof but that this debt as found in Paragraph I above falls within Section 17, Paragraph (2) of the Bankruptcy Act as a debt not affected by a discharge; that the liability of $1,-437.44 arose by defendant's obtaining money or property by false pretenses or false representation from the plaintiff herein as found in Paragraph I above, and that this debt was not discharged in bankruptcy".

Judgment was rendered in accordance with the foregoing findings.

■ In a single point defendant insists that "The Court Erred in Entering a Judg-

ment in Favor of the Plaintiff on Count II of the Plaintiff's Petition, Based upon Fraud, When the Evidence Undisputedly Showed Respondent Did Not Rely upon the Appellant's Misrepresentation, Had No Right to Rely Thereon, and Was Not Ignorant or Its Falsity". In argument of this point, defendant preliminarily reminds us of the necessary constitutive elements of actionable fraud as they are stated in Wolf v. Kansas City Tire & Service Co., Mo.App., 257 S.W.2d 408, as follows: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the person and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, and (8) the right to rely thereon. A ninth element, to-wit, the hearer's "consequent and proximate injury" is recognized by this court in Williams v. Miller Pontiac Company, Mo. App., 409 S.W.2d 275, citing 37 C.J.S. Fraud § 3, p. 215, and by the Supreme Court in Powers v. Shore, Mo.Sup., 248 S.W.2d 1.

As appears earlier herein the trial court has found that all necessary elements of actionable fraud have been established in this case. Of particular significance is the finding that "Ralph W. Tatro knew that it was not her signature and knowingly tendered this false signature as being genuine", despite defendant's disclaimer of such knowledge. The trial court has thereby demonstrated its view that Tatro was not a credible witness. As required by Civil Rule 73.01, V.A.M.R., in this non-jury case we give due regard to the opportunity of the trial court to judge of the credibility of the witnesses, inasmuch as there is sharp conflict in the testimony on vital issues. Both in deference to the trial court's exercise of that prerogative, and by reason of our independent views as to the credibility, weight and probative effect of the evidence, we approve the findings of fact made by that court and adopt them as our own findings herein.

The following brief comment will be sufficient to identify six of the essential elements of fraud that have been so clearly established defendant makes no contention otherwise: (1) Defendant's act of returning the loan papers to plaintiff with the name "Billie Tatro" inscribed thereon was a representation that his wife had in fact signed them. A representation is not confined to words or positive assertion; it may consist as well of deeds, acts or artifices calculated to mislead another. Jones v. West Side Buick Auto Co., 231 Mo.App. 187, 93 S.W.2d 1083. (2) The falsity of defendant's representation lies in the fact, as found both by the trial court and this court, that the purported signatures of Billie Tatro on the loan documents were false and were written by some person other than Billie Tatro. The evidence does not permit a contrary finding on this question. Billie Tatro denies that she signed the loan papers. Defendant equivocates on the issue but admits that "it really doesn't look like her signature". The handwriting expert appointed by the court by agreement of the parties condemns the signatures as false. The issue is thus foreclosed. It is not necessary that we inquire or speculate as to what person affixed the false signatures. (3) The materiality of the representation is attested by the circumstance that the loan was conditioned upon signature of the loan instruments by defendant's wife. (4) It is the finding, both of the trial court and this court, that defendant had knowledge of the falsity of his representation. In any event, under his own testimony he was ignorant of its truth. (5) It was defendant's intent it should be acted upon by plaintiff and in the manner reasonably contemplated, since no other reasonable purpose can be ascribed for delivering purportedly executed loan documents than to induce completion of the loan applied for and to obtain its proceeds. * * * (9) Plaintiff has *sustained consequent and proximate injury* in the sum stipulated by the parties.

We now consider defendant's specific complaints that three necessary

elements of a cause of action for fraud have not been proven. Defendant first complains there is no proof that plaintiff relied on defendant's misrepresentation. In fact, says defendant, it is affirmatively shown by the evidence that plaintiff did not rely thereon. The whole basis of that argument is the testimony of plaintiff's branch manager that it was normal practice to send loan papers out for people to sign if they have had a previous account, because their signature can be verified, and that plaintiff had a previous account with Mrs. Tatro. The only significance of that testimony is that the possession of a valid sample signature by Billie Tatro may have afforded plaintiff *opportunity* to compare therewith the signatures on the loan instruments defendant returned to the loan office. There is no circumstance mentioned in evidence reasonably permitting an inference that any such comparison was actually made. The fact there is no direct evidence on behalf of plaintiff that it relied upon the misrepresentation does not, of itself, militate against the sufficiency of the evidence to establish that element of the case. The fact of reliance does not require direct proof and it may be inferred from all the facts and circumstances in the case. Jones v. West Side Buick Auto Co., supra. In this case plaintiff agreed to loan defendant money on condition he obtain his wife's signature on necessary documents. Those instruments were entrusted to defendant and he took them away from plaintiff's office for that purpose. The evidence shows that when he later returned and turned the papers over to plaintiff's employee he received the loan proceeds without further discussion or ceremony. As we said above, there is nothing in the evidence to indicate the signatures were questioned or compared. The loan papers were "given to the discount clerk to prepare the check and he (Tatro) was given the money at that time". The reasonable inference from these circumstances is that plaintiff accepted the purported signatures of defendant's spouse as genuine in reliance upon defendant's false representation. Our findings accord with the inference.

Defendant next argues it has not been established that plaintiff had the right to rely on his misrepresentation of fact. In urging this proposition defendant directs attention to general rules our courts have stated to the effect that where the parties to a transaction are on equal footing and the means of knowledge are equally available to both parties, a misrepresentation or erroneous statement of fact is not actionable; that where a party makes his own investigation he may not rely on misrepresentations of another; and that courts will not protect those who, with full opportunity to do so, will not protect themselves.[1] This court has given due recognition to those broadly stated generalizations. In Cantley v. Plattner, 228 Mo.App. 411, 67 S.W.2d 125, we said, "Ordinarily, it is true that neither law nor equity will afford relief for false representations where the parties stand upon an equal footing or where the subject-matter in dispute is equally known to both; and, if one trusts to representations not calculated to impress a person of ordinary prudence, or neglects means of information within easy reach, he should suffer the consequences." However, we qualified the foregoing by further stating: "But such rule has no application where a distinct and specific representation is made to be acted upon or for the purpose of inducing action and which has induced action. (Citing Union National Bank v. Hunt, 76 Mo. 439; Cottrill v. Krum, 100 Mo. 397 loc. cit. 404, 13 S.W. 753, 18 Am. St.Rep. 549; Judd v. Walker, 215 Mo. 312 loc. cit. 328, 114 S.W. 979; Kerr on Fraud and Mistake, pp. 80, 81; Conroy's, Inc. v. Ratz (Mo.App.), 14 S.W.2d 465). In the case of Judd v. Walker, supra, the court

1. See Consumers Cooperative Association v. McMahan, Mo., 393 S.W.2d 552; Brown v. Sloan's Moving and Storage Co., Mo., 296 S.W.2d 20; Paine v. Albany Insurance Co., Mo.App., 299 S.W.2d 897; Hanson v. Acceptance Finance Co., Mo. App., 270 S.W.2d 143.

said: 'We might add here that the general doctrine laid down in the books as elementary is that the doctrine of notice and means of knowledge has no application where distinct and positive representations of fact have been made, have been relied upon and have induced action.' * * * A representation may as well mislead even 'where the means of knowledge are directly at hand as where they are not; and that one may act upon positive representations of fact notwithstanding the fact that the means of knowledge are open to him, if the representation is of such character as to induce and does induce action, seems to be well-settled law. Conroy's, Inc., v. Ratz (Mo. App.) 14 S.W.(2d) 465. Under such circumstances, one later may not shield his fraud behind the alleged negligence of the other, where such negligence, if any, was caused by his misconduct, as there was evidence in this case tending to show. Conroy's, Inc., v. Ratz, supra". The foregoing principles enunciated in Cantley v. Plattner were reaffirmed by this court in Wright v. Weaver, Mo.App., 231 S.W.2d 857 and in Meyer v. Brown, Mo.App., 312 S.W. 158.[2] We accept these authorities as expressive of the law applicable to the instant question. Therefore, it is of no consequence in this case that plaintiff may have had the means at hand by which it might have discovered the falsity of the signatures in question. Under the evidence there can be no question of the fact that defendant's delivery of the loan documents, with signatures thereon purporting to be those of his wife, was a distinct and positive representation of fact that such signatures were genuine, and that the representation was made to induce, and did in fact induce plaintiff to complete the loan. Hence we are constrained to rule that the disputed element of "reliance" has been established.

2. Also see: Bertram v. Kempster, Mo. Sup., 216 S.W.2d 494; Kearnes v. Sparks, Mo.App., 260 S.W.2d 353; Shechter v. Brewer, Mo.App., 344 S.W.2d 784; Ash v. Wiley, Mo.App., 46 S.W.2d 897; Rabenau v. Harrell, 278 Mo. 247, 213 S. W. 92; Monsanto Chemical Works v.

■ Defendant finally claims there is lack of proof to establish, as an essential element of fraud, that plaintiff was ignorant of the falsity of defendant's representation, or, stated in language sometimes used by the courts, that plaintiff reasonably believed the misrepresentation to be true. Defendant in fact takes the position that the evidence directly proves that plaintiff was not ignorant of the falsity of the representation, which is to say, in effect, that the evidence directly proves that plaintiff knew the loan documents returned to it by defendant bore false signatures. The record does not support defendant in this contention. Under all the evidence the only reasonable conclusion to be reached is that the plaintiff believed the signatures were genuine. Reasonable minds reject the concept that plaintiff would have made the loan had it known the signatures were forged.

■ The trial court's award of actual damages is in an amount the parties have agreed by stipulation to be the unpaid balance of the note. It therefore meets with this court's approval. We are not disposed to disturb the trial court's award of punitive damages. Punitive damages are allowable in a case of fraud and deceit such as this where the representation is characterized by legal malice. In speaking of legal malice, our courts have in mind "simply the accepted theory of the intentional doing of a wrongful act without just cause or excuse, and not the necessity for the showing of any spite or ill will, or that the particular act was willfully or wantonly done." Brown v. Sloan's Moving & Storage Co., Mo., 296 S.W.2d 20; Jones v. West Side Buick Auto Co., 231 Mo.App. 187, 93 S.W.2d 1083, and Luikart v. Miller, Mo.Sup., 48 S.W.2d 867.

■ Finally, we specifically approve and reaffirm the trial court's finding that

American Zinc, Lead and Smelting Co., Mo.Sup., 253 S.W. 1006; Hutchings v. Tipsword, Mo.App., 363 S.W.2d 40; McGhee v. Bell, 170 Mo. 121, 70 S.W. 493, 59 L.R.A. 761; Selle v. Wrigley, 233 Mo. App. 43, 116 S.W.2d 217.

the defendant's discharge in bankruptcy has not released him from the debt on which the judgment herein was founded. U.S. C.A., Title 11, Bankruptcy, Sec. 35(a) (2); Burkhart v. Industrial Transportation Co., Mo.App., 249 S.W. 969.

The judgment is affirmed.

All concur.