James MAHAFFEY and Helen Mahaffey, his Wife, Plaintiff-Appellants,

v.

James O. KWON, Terre Du Lac Homes, Inc., A Corporation, and Terre Du Lac, Inc., A Corporation, Defendants-Respondents.

No. 44972.

Missouri Court of Appeals, Eastern District, Division One.

Sept. 27, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 26, 1983.

Application to Transfer Denied Nov. 22, 1983.

Geoffrey L. Pratte, Raymond Roberts, Farmington, for plaintiffs-appellants.

John Reid, Fredericktown, for defendants-respondents.

STEPHAN, Judge.

Plaintiffs James and Helen Mahaffey appeal from a judgment for defendants James O. Kwon, Terre Du Lac Homes, Inc., and Terre Du Lac, Inc., entered at the close of plaintiffs' case on Count I of their petition seeking reformation of a contract. Plaintiffs sought damages in other counts; but, by agreement of the parties, the equitable claim for reformation was tried to the court without a jury. The judgment for the defendants was designated as final for purposes of appeal. In apparent response to plaintiffs' request for findings of fact and conclusions of law the trial court's judgment was accompanied by a memorandum opinion. On the basis of the record before us, we are of the opinion that judgment for defendants at the close of plaintiffs' case was improvidently granted. We, therefore, reverse and remand for a new trial.

In September, 1976, plaintiffs resided in California, but purchased a lot at Terre Du Lac Development in St. Francois County, Missouri, in anticipation of relocating there. Plaintiffs talked to a representative and received information from Bust Home Builders about constructing a home on the lot. Plaintiffs moved to Missouri in March, 1977, and obtained competitive bids from other builders.

Mr. Mahaffey became a salesman for Terre Du Lac, Inc., and learned at a sales meeting in April, 1977, that his employer had taken over Bust Home Builders and was offering to build homes for its employees at cost plus seven percent. Mr. Mahaffey confirmed the offer with James Kwon, Senior Vice President of Terre Du Lac, Inc., and of Terre Du Lac Homes, Inc., who told plaintiff to deal with Robin Bust, Operations Manager of Terre Du Lac Homes, Inc.

On April 29, 1977, Mr. Bust submitted a proposal to plaintiffs, which contained Mr. Bust's signature, a target price of $87,000, and a maximum price of $95,000. The latter figure, referred to in the testimony as the "not to exceed" or the "ceiling" price, represented the maximum amount plaintiffs would be required to pay regardless of cost overruns. Plaintiffs did not sign the proposal because these two figures were too high, although during the negotiations Mr.

Mahaffey struck through the $95,000 not-to-exceed figure and wrote in $92,450.

Mr. Bust subsequently prepared a proposal, dated May 5, 1977, with a not-to-exceed price of $92,458, and two target prices, $85,000 in one column and $83,500 in the next. On May 9th, Mr. Bust presented the proposal to plaintiffs at Mr. Bust's office. Because of the conflicting target prices, Mr. Mahaffey struck through them and with an asterisk noted on the document that the target price was to be changed to $83,212, an amount which Mr. Bust refigured on the spot. After this change was made, both Mr. Bust and plaintiffs signed the document and copies of it, the Mahaffeys signing on the cover sheet's designated "acceptance" line. Because of the confusion created by the different target prices on the document, however, Mr. Bust and plaintiffs agreed to have it retyped.

The following day, May 10th, the Mahaffeys met with Mr. Bust at his office. Bust testified that Mr. Mahaffey looked through the retyped contract and was given an affirmative response when Mahaffey asked whether the target price had been typed to reflect their agreement. Bust said nothing about any other changes in the retyped agreement. Plaintiffs testified that they thereafter signed this document without a close reading because they had no reason to believe the retyped contract reflected anything other than what they had agreed on the day before. Unbeknownst to the Mahaffeys, the not-to-exceed clause had been deleted from the document when it was retyped under the supervision of Mr. Kwon. In deposition testimony introduced by plaintiffs, Kwon stated Bust knew of the deletion of the ceiling price; Bust denied having such knowledge at the time of the signing.

Mr. Mahaffey discovered the deletion of the words "not to exceed" in January, 1978, when he received a letter from Mr. Kwon demanding money in excess of what he believed he had contracted for.

In his deposition, Bust testified that Kwon had instructed him to delay the Mahaffey project, and that Kwon's orders to convert Bust's former hourly employees to subcontractors resulted in an increased direct cost for Terre Du Lac Homes, Inc., which caused the actual cost incurred by Terre Du Lac Homes to run over the not-to-exceed price Bust and plaintiffs agreed upon. This sum, $25,039.22, was ordered by Kwon to be collected from the Mahaffeys. Plaintiffs subsequently commenced this suit for reformation.

In this court tried case, we are constrained to affirm the judgment of the trial court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). In its judgment, the trial court held as a matter of law that the failure of the plaintiffs to read the retyped contract automatically operated as an absolute bar to their claim for reformation. Such a ruling is an erroneous declaration of the law, and a judgment based on such standard is an erroneous application of the law.

■ Generally, equitable relief is unavailable for fraudulent representations where the parties deal at arms' length; and if a party relies on representations that would arouse the suspicions of one with ordinary prudence, or neglects means of information easily discoverable, he should bear the risk. However, this rule "has no application where a distinct and specific representation is made to be acted upon or for the purpose of inducing action and which has induced action." *Universal C.I.T. Credit Corporation v. Tatro,* 416 S.W.2d 696, 703 (Mo.App.1967). In *Tatro,* plaintiff loan company agreed to lend money to the defendant if he obtained his wife's signature on certain documents. The defendant forged her signature and returned the papers. The defendant received the loan without further discussion, or without the loan company's comparing the signature on the documents with their own account cards bearing defendant's wife's true signature. The court concluded that there was a reasonable inference that the loan company

accepted the signatures as genuine, so that the borrower could not shield his fraud behind the alleged negligence of the other. *Id.* at 704. The accessibility of the wife's signature card was of no moment, because the defendant's delivery of the loan documents complete with his wife's purported signatures constituted "a distinct and positive representation of fact" that her signatures were valid. The defendant's representation was intended to induce and did in fact induce the plaintiff to complete the loan. *Id.* See also *Dewey v. Jenkins,* 567 S.W.2d 382 (Mo.App.1978).

■■■ So it is here by virtue of the formalities attended to during the signing of the May 9, 1977 agreement, i.e. serious negotiations as to target price, designated signature lines, the term "acceptance" printed on the form, and signing by both parties at the conclusions of the negotiations. The confusion brought about by various target prices and lines drawn through the rejected figures understandably occasioned the retyping in order to have a "clean" copy. That plaintiffs' inquiries the following day focused entirely on whether the retyped copy reflected the proper target price is a perfectly natural continuum of the prior conversation in which the target price was the primary subject. The not-to-exceed price had not been in dispute, and Mr. Bust's silence, at the second meeting, concerning the deletion of this very significant provision could well have been interpreted by the trier of fact as a representation of its continued presence in the contract. That it was within the power of plaintiffs to discover the deletion does not necessarily bar them from the equitable relief they sought. See *Tietjens v. General Motors Corporation,* 418 S.W.2d 75, 81–82 (Mo. 1967). By embracing the view that plaintiffs' failure to read the contract barred them from relief under any circumstances, the trial court deprived plaintiffs of judicial consideration of the circumstances leading up to the second signing of the contract. In matters of reformation, neglect of the party seeking it does not always rise to the level of negligence so as to bar relief. *Kemna v. Graver,* 630 S.W.2d 160, 161 (Mo.App.1982).

Plaintiffs are entitled to a determination of whether, under all the circumstances, they could properly regard the existence and amount of the not-to-exceed price as a matter already settled when they executed the retyped contract.

We therefore hold that the trial court erred in granting defendants' motion for judgment, and reverse and remand for a new trial on all of the issues.

Reversed and remanded.

SIMON, P.J., and SATZ, J., concur.