**D'ARCY AND ASSOCIATES, INC., Appellant,**

v.

**K.P.M.G. PEAT MARWICK, L.L.P., Respondent.**

**No. WD 62290.**

Missouri Court of Appeals, Western District.

March 16, 2004.

Patrick Aylward Kalb, Patrick E. D'Arcy, Kansas City, KS, for appellant.

Winthrop B. Reed, III, St. Louis, for respondent.

PAUL M. SPINDEN, Judge.

D'Arcy and Associates, Inc., appeals the circuit court's two summary judgments granted separately for K.P.M.G. Peat Marwick, L.L.P., on D'Arcy's claims for tortious interference and fraud. Because D'Arcy's tortious interference claims were time-barred, we affirm the circuit court's judgment on those claims. The parties are disputing material factual issues concerning D'Arcy's fraud claims; therefore, we reverse the circuit court's judgment on those claims.

D'Arcy's business was to help other businesses obtain tax benefits. On June 11, 1990, D'Arcy agreed to help Vi–Jon Laboratories, Inc., obtain benefits for tax years 1987 through 1992. Vi–Jon agreed to give D'Arcy 30 percent of any benefits that D'Arcy was able to help it obtain. Because Vi–Jon was a closely-held "S corporation," any benefits that it realized passed through to Vi–Jon's shareholders.

D'Arcy's and Vi–Jon's agreement provided that Vi–Jon was responsible for preparing all federal, state, and local tax returns. Vi–Jon employed K.P.M.G. Peat Marwick to prepare these returns. D'Arcy used the information from these tax returns to determine whether or not Vi–Jon was eligible for tax benefits.

In early October 1990, Brian D'Arcy and a D'Arcy employee met with Dennis Hintz and Thomas Erickson, an accountant with K.P.M.G. Peat Marwick, to discuss Vi–Jon's tax returns for 1988. Because of Vi–Jon's reorganization from a "C corporation" to an "S corporation" in 1988, its 1988 tax periods ended on June 30 and on December 31. Erickson allegedly told D'Arcy that, in preparing amended returns for 1988, K.P.M.G. Peat Marwick would "net out" a gain during one tax period with a loss in the other and that this would reduce its tax liability. K.P.M.G. Peat Marwick apparently did not do this, caus-

ing D'Arcy, it contends, to lose $3,729.85 in fees.

D'Arcy's and Vi–Jon's business relationship ended in May 1992, and D'Arcy sued Vi–Jon for breach of contract. The lawsuit, including Vi–Jon's counterclaims, ended with the parties dismissing with prejudice by agreement.

More than six years later, on October 14, 1998, D'Arcy filed this 19–count lawsuit against K.P.M.G. Peat Marwick accusing it of tortious interference and fraud. K.P.M.G. Peat Marwick responded with a motion to dismiss or for summary judgment on those counts averring tortious interference on the ground that they were barred by the statute of limitations. The circuit court granted the motion. Because the summary judgment did not dispose of all the claims and because the circuit court did not deem an immediate appeal on the claims disposed of to be proper, D'Arcy was unable to appeal the summary judgment at that time.

On July 16, 2002, K.P.M.G. Peat Marwick filed a second motion for summary judgment on the remaining counts in which D'Arcy had alleged fraud. K.P.M.G. Peat Marwick asserted that D'Arcy could not establish each element of the offense. The circuit court granted the motion, and D'Arcy filed this appeal.

■ D'Arcy first argues that the circuit court erred in granting summary judgment on its tortious interference claims because K.P.M.G. Peat Marwick's motion, which it denominated a "motion to dismiss and/or for summary judgment," was deficient and that the circuit court erred in not regarding it solely as a motion to dismiss. D'Arcy notes that the motion had several exhibits attached to it, and none of them were sworn affidavits or authenticated. D'Arcy also asserts that the circuit court erred in considering D'Arcy's petitions, which were attached to the motion, because they were not verified.

D'Arcy's contention is without merit. In rendering its summary judgment for K.P.M.G. Peat Marwick, the circuit court ruled that D'Arcy's claims were barred by the applicable statute of limitations. Even assuming that D'Arcy is correct concerning the deficiencies of K.P.M.G. Peat Marwick's motion and that these deficiencies prohibited the circuit court from considering it as a motion for summary judgment, the motion remained a motion to dismiss. K.P.M.G. Peat Marwick denominated its motion as either a motion to dismiss or a motion for summary judgment. Indeed, D'Arcy treated the motion as a motion to dismiss as evidenced by its telling the circuit court that it was doing so.

■ A motion to dismiss is an appropriate means for challenging jurisdiction on the ground that the statute of limitations bars a claim so long as the plaintiff's petition clearly establishes on its face and without exception that the statute of limitations has expired. *Yahne v. Pettis County Sheriff Department,* 73 S.W.3d 717, 719 (Mo.App.2002). D'Arcy's petition averred that, in April 1992, K.P.M.G. Peat Marwick began diverting D'Arcy's work to itself and collecting the fees that D'Arcy would have received but for K.P.M.G. Peat Marwick's tortious interference.

D'Arcy does not dispute that it suffered some damage capable of ascertainment in April 1992,[1] but it asserts that its cause of

---

1. In its reply brief, D'Arcy asserted for the first time, "There were no damages prior to the end of 1992," and that it had "no knowledge of the breach of contract until after 1995." These arguments are contrary to the allegations of D'Arcy's petition and appellate brief. Although D'Arcy asserted that the tort was continuing and that the full extent of the damages was not ascertainable in April 1992, its allegations and brief expressed that it was

action did not accrue then because the tort was continuing and, therefore, damages were not fully ascertainable then. D'Arcy argues that its contract with Vi–Jon provided that D'Arcy was entitled to collect a fee for securing tax benefits through the tax period ending on December 31, 1992, and three years beyond for benefits retroactively retrieved within the statutorily allotted time.

■ Generally, " 'a statute of limitation begins to run when the cause of action has accrued to the person asserting it, the accrual being whenever such a breach of duty has occurred, or such a wrong has been sustained, as will give a right then to bring and sustain a suit.' " *Davis v. Laclede Gas Company*, 603 S.W.2d 554, 555 (Mo. banc 1980) (quoting *Allison v. Missouri Power and Light Company*, 59 S.W.2d 771, 773 (Mo.App.1933)). Moreover, § 516.100, RSMo 2000, says:

[F]or the purposes of sections 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained.

■ Damage is capable of ascertainment when it can be discovered or is made known, even if its extent remains unknown. *Jordan v. Willens*, 937 S.W.2d 291, 294 (Mo.App.1996); *M & D Enterprises, Inc. v. Wolff*, 923 S.W.2d 389, 394 (Mo.App.1996). That the extent of damages is not known is not significant. Accrual requires only that some damage be sustained and be capable of being ascertained. *Klemme v. Best*, 941 S.W.2d 493, 497 (Mo. banc 1997). That further damage may occur does not matter. *Jordan*, 937 S.W.2d at 294. The Supreme Court has explained:

In many actions the extent of damage may be dependent on uncertain future events. . . . Such uncertainties have never been held to preclude the filing of suit and . . . have not delayed the accrual of the plaintiff's claim for purposes of the statute of limitations. The most that is required is that some damages have been sustained, so that the claimants know that they have a claim for some amount.

*Dixon v. Shafton*, 649 S.W.2d 435, 439 (Mo. banc 1983).

■ Under this standard, D'Arcy's petition established on its face and without exception that the statute of limitations barred its claims. The limitation for asserting a tortious interference action is five years after the cause's accrual. Section 516.120(4), RSMo 2000. D'Arcy's petitions averred that it first sustained damage capable of being ascertained in April 1992 when, at K.P.M.G. Peat Marwick's instigation, Vi–Jon repudiated its agreement with D'Arcy and stopped paying it fees.[2]

---

aware in mid–1992 that K.P.M.G. Peat Marwick had offered to perform the work that D'Arcy had contracted to perform and that Vi–Jon had decided not to honor their agreement. Moreover, D'Arcy's attempts to save its claim by relying exclusively on a continuing tort argument belie its new contention that it had not previously sustained damage capable of ascertainment.

2. The circuit court was obligated to look only at D'Arcy's petition in reaching these conclusions, but we note that D'Arcy confirms the conclusion in its brief in which D'Arcy referred us to a letter that its president wrote to Vi–Jon in May 1992. In that letter, D'Arcy informed Vi–Jon that it knew that K.P.M.G. Peat Marwick had offered to do the work that D'Arcy had contracted with Vi–Jon to do for a certain fee and that D'Arcy would vigorously

D'Arcy contends, however, that the tort was continuing and that this saves its claim. The Supreme Court recognized the concept of continuing torts in *Davis v. Laclede Gas Company*, 603 S.W.2d 554 (Mo. banc 1980). The court suggested, however, that it would not extend the concept much beyond *Davis'* "peculiar and particular circumstances:" when the wrong continues from day to day, creates a fresh injury from day to day, and is capable of being terminated. *Id.* at 556.

For the continuing tort exception to apply, the wrong must be continuing or repeating. Damages resulting from one completed, wrongful act, although they may continue to develop, are not adequate. *Lato v. Concord Homes, Inc.*, 659 S.W.2d 593, 595 (Mo.App.1983). "When there is only one wrong which results in continuing damage, ... the cause of action accrues when that wrong is committed and the damage sustained is capable of ascertainment." *Arst v. Max Barken, Inc.*, 655 S.W.2d 845, 847 (Mo.App.1983). "Damage resulting from one wrong that continues and becomes more serious over time does not extend the time within which suit may be brought." *Business Men's Assurance Company of America v. Graham*, 891 S.W.2d 438, 446 (Mo.App.1994).

D'Arcy did not aver a continuing tort. Its cause of action, tortious interference, emanated from a complete, wrongful act. To establish tortious interference, D'Arcy had to show that K.P.M.G. Peat Marwick unjustifiably induced or caused the breach of Vi-Jon's contract with D'Arcy. *Ozark Employment Specialists, Inc. v. Beeman*, 80 S.W.3d 882, 893 (Mo.App.2002). Assuming that K.P.M.G. Peat Marwick unjustifiably interfered with D'Arcy's and Vi-Jon's business relationship, its tortious conduct was complete when it induced or caused the breach. The wrong, therefore, was not continuing. The damage or injury that had been inflicted may have continued to develop during successive tax periods, but it did not result from repeating wrongful conduct.

D'Arcy was aware that it had sustained damage in mid–1992. A cause of action accrues when damage can be ascertained—not when the precise amount of damage is known. *Allison v. Missouri Power & Light Company*, 59 S.W.2d 771, 773 (Mo.App.1933). The circuit court, therefore, correctly granted K.P.M.G. Peat Marwick's motion to dismiss.

Because our review is *de novo*, that the circuit court may have erred in declaring summary judgment rather than in granting a motion to dismiss is of no significance. The circuit court's denial of recovery was proper because the statute of limitations barred the claims.

D'Arcy next charges the circuit court with error in granting summary judgment for K.P.M.G. Peat Marwick on its fraud claims. It challenges the judgment on both procedural and substantive grounds: K.P.M.G. Peat Marwick's statement of uncontroverted material facts did not comply with Rule 74.04(c)(1), and the record supported each element of fraud.[3]

defend its business interest and take necessary action to enforce its contractual rights. Any suggestion that D'Arcy was not aware of K.P.M.G. Peat Marwick's actions and their consequences to D'Arcy as of mid–1992 simply is unfounded.

3.  The circuit court said that it granted summary judgment because "[D'Arcy] has failed to prove the elements required for a fraud claim." To the extent that the circuit court placed the burden on D'Arcy to prove the elements of its case rather than placing the burden on K.P.M.G., the movant, to show facts negating any element of D'Arcy's claim, it erred. D'Arcy's actions are of no consequence because K.P.M.G. Peat Marwick's motion did not establish a right to judgment as a

■ Our review of the circuit court's summary judgment is *de novo*. *ITT Commercial Finance Corporation v. Mid–America Marine Supply Corporation*, 854 S.W.2d 371, 376 (Mo. banc 1993). We review the evidence in the light most favorable to the party against whom the circuit court ruled and endeavor to do this by accepting only inferences in the evidence that favor the party against whom the circuit court ruled. *Id.* Before a circuit court can enter summary judgment, it must determine that the parties are not disputing any genuine issues of material fact and that the party seeking summary judgment is entitled to a judgment as a matter of law. Rule 74.04(c)(6). Because summary judgment is "an extreme and drastic remedy," we exercise great caution in affirming a summary judgment because the procedure implicates the denial of due process by denying an opposing party his day in court. *ITT*, 854 S.W.2d at 377.

■ Fraud has nine essential elements: (1) a representation (2) that is false (3) and material, (4) that the speaker knows is false or is ignorant of whether or not it is truthful (5) but which the speaker makes with the intent that the hearer will act on it in a manner reasonably contemplated (6) in a case in which the hearer is ignorant of the representation's falsity (7) and with justification (8) relies on the representation's being true (9) to his harm as a consequence of the proximately caused injury. *Heberer v. Shell Oil Company*, 744 S.W.2d 441, 443 (Mo. banc 1988). A defending party can establish a right to summary judgment by showing facts that negate any one of these nine elements. *ITT*, 854 S.W.2d at 381.

The circuit court did not specify which elements it deemed D'Arcy unable to establish. K.P.M.G. Peat Marwick's motion,

however, asserted two unprovable elements: its consequent and proximate injury and its justification in relying on the representation.

In contending that D'Arcy was not damaged by K.P.M.G. Peat Marwick's alleged representation, K.P.M.G. Peat Marwick makes two arguments: that D'Arcy was not entitled to a fee because Vi–Jon's stockholders never received economic benefits and that, because D'Arcy's agreement was with Vi–Jon alone, it had no contractual right to a fee based on economic benefits received by stockholders. Neither contention supports K.P.M.G. Peat Marwick's claim that D'Arcy was not damaged.

Although K.P.M.G. Peat Marwick did attach certified tax records to its motion, it provided no explanation of entries on those records, and they appear to be conflicting. K.P.M.G. Peat Marwick refers us to printouts for Vi–Jon's stockholders that have entries stating "EZC INCOME MOD ____" followed by ".00." Even were we to assume that these entries referred to the benefits at issue in this case and indicated that Vi–Jon's stockholders received none, additional printouts in the same records indicate an enterprise zone credit of $16,172.67 for one stockholder and an enterprise zone credit of $1,849.55 for the other. Moreover, the Department of Revenue sent letters to the stockholders requesting additional documentation supporting the enterprise zone credits that they claimed. Reviewing the evidence in the light most favorable to D'Arcy, Vi–Jon did not consistently use the same source for its tax related work. That K.P.M.G. Peat Marwick did not supply the information to the Department of Revenue does not address whether or not another source provided the information or whether or not the Brunners received the benefits.

matter of law. Only when a movant meets its burden does the non-movant's burden arise.

*Wilson v. Lodwick*, 96 S.W.3d 879, 882 (Mo. App.2002).

That Vi–Jon was identified as the client in the engagement agreement and that Vi–Jon's stockholders were not mentioned is also of no consequence. An S corporation's income and losses pass through to stockholders for tax purposes. 26 U.S.C. § 1366 (2000); Section 143.471, RSMo 2000; *Hermann v. Director of Revenue*, 47 S.W.3d 362, 364 (Mo. banc 2001). That the stockholders may have ultimately claimed the benefits on their individual tax returns does not mean that Vi–Jon did not "derive additional economic benefits."

K.P.M.G. Peat Marwick also argues that D'Arcy was not diligent in verifying Erickson's representation and, therefore, was not justified in relying on it. K.P.M.G. Peat Marwick contends that D'Arcy's president, Brian D'Arcy, was a skilled accountant who doubted Erickson's accounting methods and should have inquired further. K.P.M.G. Peat Marwick asserts that D'Arcy could have independently verified the information by directly contacting the stockholders for their personal tax returns or by using a power of attorney.

Brian D'Arcy indicated that, although he had not personally encountered Erickson's accounting method before, he was familiar with it and believed that it was proper. This creates a material issue of fact.

Nonetheless, even if were we to grant that Brian D'Arcy could have accessed the stockholders' personal tax returns but failed to do so, this would not necessarily negate D'Arcy's right to rely on Erickson's alleged representation of the relevant data. Although a party must exercise care and prudence for his own welfare, the rule has no application to a case in which the speaker makes a distinct and specific representation to induce action, and that does induce action. That the hearer stands on equal footing with the speaker or has equal knowledge or equal means for obtaining the information is of no consequence. *See Tietjens v. General Motors Corporation*, 418 S.W.2d 75, 82 (Mo.1967); *Essex v. Getty Oil Company*, 661 S.W.2d 544, 550 (Mo.App.1983); *Universal C.I.T. Credit Corporation v. Tatro*, 416 S.W.2d 696, 703–04 (Mo.App.1967).

We do not know for certain what Erickson represented during his meeting with Brian D'Arcy. If Erickson's statement was as D'Arcy alleges—and this is an issue of fact that must be determined—it would seem to excuse D'Arcy's failure to conduct an independent investigation. As a material issue of fact, it is a matter that must be resolved in further adjudication.

K.P.M.G. Peat Marwick's motion to dismiss D'Arcy's appeal for failure to comply with multiple provisions of Rule 84.04 was taken with the case and is hereby denied.[4] We affirm the circuit court's judgment dismissing D'Arcy's tortious interference claims (Counts I, II, III, IV, V, VI, VII, XI, XII, XIII, XIV and XV). We reverse the circuit court's summary judgment on D'Arcy's fraud claims (Counts VIII, IX, X, XVI, XVII, XVIII and XIX) and remand the case for further proceedings.

THOMAS H. NEWTON, Presiding Judge, and PATRICIA A. BRECKENRIDGE, Judge, concur.

---

4. Although we deny the motion, we admonish D'Arcy to consult Rule 84.04 more diligently in the future. D'Arcy's statement of facts contains argument and omits relevant information, and its points relied on are rambling, bordering on incoherence, and are close to failing to preserve anything for appeal. Because we favor resolution on the merits, so long as we can reasonably do so without becoming an advocate, we have gratuitously reviewed D'Arcy's claims.