# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2238
_____

City of Carthage, Missouri

*Plaintiff - Appellant*

v.

Union Pacific Railroad Co.

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Western District of Missouri - Joplin
_____

Submitted: January 10, 2023
Filed: March 1, 2023
_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.
_____

BENTON, Circuit Judge.

The City of Carthage sued Union Pacific Railroad Co. for breach of contract, claiming UP failed to maintain several bridges. On summary judgment, the district court[1] ruled that the City's breach-of-contract claim was barred by the five-year

[1]The Honorable W. Brian Gaddy, United States Magistrate Judge for the Western District of Missouri, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

statute of limitations, § 516.120(1), RSMo 2016. The City appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

In the late 1800s, the City of Carthage, by seven ordinances, granted Missouri Pacific Railway Company ("MPRC") the right to "construct and keep in repair" several bridges and crossings. The ordinances required MPRC to, in the words of one ordinance, "keep all such crossings and approaches in good condition for the safe and convenient passage of animals, teams and persons." In 1990, UP acquired MPRC. By the early 2000s, some of the bridges had deteriorated and become unsafe for use. In 2002, the Missouri Department of Transportation informed the City that the bridges needed to be repaired. In 2011, the City and UP met to discuss repairing the bridges. UP did not make any repairs. On February 15, 2013, the City wrote UP demanding repair of the bridges as required by the ordinances. More than five years later, on January 2, 2019, the City sued UP seeking specific performance and a declaratory judgment that it must make the repairs.

Both parties moved for summary judgment. The district court granted UP's motion, ruling that the City's breach-of-contract claim was barred by the five-year statute of limitations and that the continuing wrong rule did not preserve the claim. The City appeals.

This court reviews de novo the grant of summary judgment and the district court's conclusions of law. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc); *Selective Ins. Co. South Carolina v. Sela*, 11 F.4th 844, 851 (8th Cir. 2021). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(a)**. On summary judgment, this court views all evidence and reasonable inferences most favorably to the non-moving party. *Meier v. St. Louis*, 934 F.3d 824, 827 (8th Cir. 2019).

II.

"Missouri has two statutes of limitations relating generally to contract actions: sections 516.110(1) and 516.120(1), RSMo." ***Hughes Dev. Co. v. Omega Realty Co.***, 951 S.W.2d 615, 616 (Mo. banc 1997). By section 516.120(1): "All actions upon contracts, obligations or liabilities, express or implied, except those mentioned in section 516.110" must be brought within five years. **§ 516.120(1), RSMo 2016**. "Section 516.110(1) is an exception to the general five-year limitations period established by 516.120(1)." ***Rolwing v. Nestle Holdings, Inc.***, 437 S.W.3d 180, 182 (Mo. banc 2014). Section 516.110(1) requires "an action upon any writing . . . for the payment of money or property" must be brought within 10 years. **§ 516.110(1), RSMo 2016.**

The ten-year statute applies only if the "plaintiff seeks a judgment from the defendant for payment of money the defendant agreed to pay in a written contract." ***Hughes Dev. Co.***, 951 S.W.2d at 617. *See **Community Title Co. v. Stewart Title Guar. Co.***, 977 S.W.2d 501, 502 (Mo. banc 1998) (applying ten-year statute of limitations when "the promise to pay a specified amount of money is in the contract, and the suit seeks to enforce this promise of the contract."); ***Rolwing***, 437 S.W.3d at 183 (holding the ten-year statute of limitations does not apply because the contract lacked a promise to make a payment). The promise to pay must "arise from the writing's explicit language; extrinsic evidence cannot supply the promise." ***DiGregorio Food Prod., Inc. v. Racanelli***, 609 S.W.3d 478, 481 (Mo. banc 2020). The promise to pay must be explicit and unconditional. ***J & M Sec., LLC v. Aziz***, 626 S.W.3d 863, 867 (Mo. App. 2021).

The City argues that the ten-year statute of limitations applies here because its claim seeks an equitable remedy. The City cites a Missouri appellate court decision applying the ten-year statute of limitations to a partner's equitable claims against the partnership. *See **Armistead v. A.L.W. Grp.***, 60 S.W.3d 25, 27 (Mo. App. 2001). To the contrary, this court declined to apply the ten-year statute of limitations to an equitable claim for specific performance. ***Lackawanna Chapter of Ry. &***

*Locomotive Hist. Soc'y, Inc. v. St. Louis Cnty.*, 606 F.3d 886, 890 (8th Cir. 2010) (applying Missouri law). *See generally **Mader v. United States***, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) ("It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel."). This court relied on the fact that there was not an "express written obligation provid[ing] for the payment of money or the delivery of property . . . ." ***Lackawanna***, 606 F.3d at 890, *citing **Lato v. Concord Homes, Inc.***, 659 S.W.2d 593, 594 (Mo. App. 1983). The determinative factor for applying the ten-year statute is whether the written obligation is for the payment of money (or delivery of property).

The ordinances here required MPRC to "construct, maintain and keep in repair, suitable, safe and convenient crossings . . . ." The ordinances do not have a written promise for the payment of money. The ten-year statute of limitations does not apply. The five-year statute of limitations, for contracts generally, governs the City's claim.

III.

A.

The statute of limitations begins to run once the cause of action accrues. *See **Jepson v. Stubbs***, 555 S.W.2d 307, 311 (Mo. banc 1977). "[T]he cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment . . . ." **§ 516.100, RSMo 2016**. "Capable of ascertainment" "refers to the fact of damage, rather than to the exact amount of damage." ***Business Men's Assurance Co. of Am. v. Graham***, 984 S.W.2d 501, 507 (Mo. banc 1999). *See **Dixon v. Shafton***, 649 S.W.2d 435, 438 (Mo. banc 1983) (claim accrues in a malpractice action when a plaintiff learns of the attorney's mistake, even though the extent of damage is unknown). Damage is "capable of ascertainment" when the "evidence [is] such to place a reasonably prudent person on notice of a potentially actionable injury." ***Business Men's Assurance Co. of Am.***, 984 S.W.2d at 507. *See*

*Sheehan v. Sheehan*, 901 S.W.2d 57, 58-59 (Mo. banc 1995), *quoting* **Chemical Workers Basic Union, Local No. 1744 v. Arnold Savings Bank**, 411 S.W.2d 159, 164 (Mo. banc 1966) ("Damage is ascertainable when the fact of damage 'can be discovered or made known,' not when a plaintiff actually discovers injury or wrongful conduct."). "The capable of ascertainment standard is an objective one; therefore, when relevant facts are uncontested, the statute of limitations issue can be decided by the court as a matter of law." **State ex rel. Marianist Province of U.S. v. Ross**, 258 S.W.3d 809, 811 (Mo. banc 2008).

The City's claim accrued in February 2013, at the latest. On February 15, 2013, the City wrote UP demanding repair of the bridges—establishing that the City was on notice of a potentially actionable injury. The City waited until 2019—over five years later—to sue UP. The City's claim is barred by the five-year statute of limitations.

B.

The City argues that the continuing wrong rule preserves its claim. The continuing wrong rule is an exception to the traditional claim accrual rules. *See* **Smock v. Associated Elec. Coop., Inc.**, 567 S.W.3d 211, 218 (Mo. App. 2018). Under the continuing wrong rule, "each continuation or repetition of the wrongful conduct may be regarded as a separate cause of action for which suit must be brought within the period beginning with the occurrence." **Vogel v. A.G. Edwards & Sons, Inc.**, 801 S.W.2d 746, 755 (Mo. App. 1990). Generally, Missouri "courts have applied statutes of limitations with some strictness, and exceptions and estoppels have been rather grudgingly found." **Dixon**, 649 S.W.2d at 440. *See generally* **Butler v. Mitchell-Hugeback, Inc.**, 895 S.W.2d 15, 19 (Mo. banc 1995) ("Statutes of limitations are favored in the law, and cannot be avoided unless the party seeking to do so brings himself strictly within some exception."), *citing* **Hunter v. Hunter**, 237 S.W.2d 100, 104 (Mo. 1951), *citing* **Shelby County v. Bragg**, 36 S.W. 600, 602 (Mo. 1896); **Weiss v. Rojanasathit**, 975 S.W.2d 113, 121 (Mo. banc 1998) (strictly applying a statute of limitations: "The plain language of section 516.105 mandates

that the action be brought 'within two years from the date of the occurrence of the act of neglect complained of.'"); ***State ex rel. Church & Dwight Co., Inc v. Collins***, 543 S.W.3d 22, 25 (Mo. banc 2018) (determining plaintiff's claim did not qualify for equitable tolling because "statutes of limitations in the MHRA are strictly construed."); ***Boland v. Saint Luke's Health System, Inc.***, 471 S.W.3d 703, 712 (Mo. banc 2015) (stating in a statute of limitations case: "The principles of legislative deference as well as *stare decisis* must be respected.").

The City relies on two Missouri appellate cases: *Lake St. Louis Community Association v. Oak Bluff Preserve*, 956 S.W.2d 305 (Mo. App. 1997) and *Twin Chimneys Homeowners Association v. J.E. Jones Construction Co.*, 168 S.W.3d 488, 502 (Mo. App. 2005). In the first case, lot owners sued a community association for failure to maintain a marina, as promised in an agreement. ***Lake St. Louis***, 956 S.W.2d at 307. The trial court dismissed, ruling the claim was barred by the five-year statute of limitations. ***Id.*** at 308. Reversing, the state court of appeals applied the continuing wrong rule, reasoning "the failure to maintain is a wrong which continues from day to day, it creates a fresh injury from day to day, and it is capable of being terminated." ***Id.*** at 310. The *Lake St. Louis* decision was then applied in the *Twin Chimneys* case to preserve a homeowners association's untimely claim against the developer for failure to maintain common areas. ***Twin Chimneys***, 168 S.W.3d at 501. The *Twin Chimneys* decision emphasized that "the developer trustees continually promised through 1996 [within the statute of limitations] that the common areas would be remedied." ***Id.*** at 502.

The *Lake St. Louis* case does not follow the teachings of the Missouri Supreme Court's leading authority about the continuing wrong rule, *Davis v. Laclede Gas Co.*, 603 S.W.2d 554 (Mo. banc 1980). *See generally* ***Swope v. Siegel-Robert, Inc.***, 243 F.3d 486, 496 (8th Cir. 2001) (declining to follow Missouri appellate court decisions when other case law indicates the Missouri Supreme Court would rule otherwise). The *Davis* decision explained the continuing wrong rule applies only in the "peculiar and particular circumstances" where:

> the wrong done may be said to continue from day to day, and to create a fresh injury from day to day, and the wrong is capable of being terminated, a right of action exists for the damages suffered within the statutory period immediately preceding suit.

*Davis*, 603 S.W.2d at 556.

In *Davis*, the owner of a dry cleaning plant sued a gas company for lost profits after it installed a gas meter in the wrong place. *Id.* at 555. Instead of moving the meter, the gas company added a vent pipe that restricted the supply of gas, rendering the presses inoperable. *Id.* Davis sued more than five years after the improper installation of the meter. *Id.* at 556. The Missouri Supreme Court applied the continuing wrong rule to preserve Davis's claim, determining the installation of the vent pipe created an ongoing harm to Davis's business. *Id.*

The Missouri Supreme Court, in *Davis*, emphasized that the continuing wrong rule should be narrowly applied. *See id.* (limiting the rule's application, noting "the following rule of law should be applied in the peculiar and particular circumstances of this case"). The *Davis* decision applied the continuing wrong rule because the defendant's affirmative act of installing the vent pipe—during the limitations period—restricted Davis's gas supply, creating an ongoing harm. *See id.* at 559 (Bardgett, J., concurring, joined by Seiler and Higgins, JJ.) ("Here, all damages did not accrue from the initial breach or tort, but rather subsequent damages arose on a business day-to-day basis and, allegedly at any time the vent was removed or the meter was moved, the repetitive, but new, day-to-day damages would cease.").

Almost all the Missouri court of appeals opinions interpreting *Davis* apply the continuing wrong rule when the defendant engages in ongoing affirmative acts that harm the plaintiff. *See, e.g.*, *Twin Chimneys*, 168 S.W.3d at 502 (emphasizing that the defendant "continually promised" to remedy common areas); *Cook v. DeSoto Fuels, Inc.*, 169 S.W.3d 94, 105 (Mo. App. 2005) (continuing wrong rule applied when defendant repeatedly released contaminants onto plaintiff's property,

creating "a fresh injury from day to day"); ***Johnson Dev. Co. v. First Nat'l Bank of St. Louis***, 999 S.W.2d 314, 318 (Mo. App. 1999) (continuing wrong rule restarted the statute of limitations "upon the payment of each check" the wrongdoer forged during the statute of limitations period).  *Cf.* ***Balke v. Central Missouri Elec. Coop.***, 966 S.W.2d 15, 21 (Mo. App. 1997) (electric company's installation of a defective transformer constituted a continuing wrong because it interrupted the respondent's dairy farm operation, "creat[ing] fresh injuries to respondents from day to day").

Here, UP did not engage in any affirmative act during the limitations period. Without more, a failure to act does not justify the continuing wrong rule.  "Damages resulting from one completed, wrongful act, although they may continue to develop, are not adequate [to prove a continuing wrong]." ***D'Arcy & Assocs., Inc v. K.P.M.G. Peat Marwick, L.L.P.***, 129 S.W.3d 25, 30 (Mo. App. 2004).  *See* ***Smock***, 567 S.W.3d at 219 ("The continuing wrong exception does not apply to the Smocks' trespass and injunctive relief claims, however, because the injury emanates from a completed act—the removal of trees and brush from the easements in 1991 and 1992."); ***Randolph v. Missouri Highways and Transp. Comm'n***, 224 S.W.3d 615, 619 n.4 (Mo. App. 2007) ("Damages resulting from one completed, wrongful act, such as the MHTC construction in this case, are not adequate . . . the Property Owners' argument regarding a continuing type of injury must fail."); ***Cook***, 169 S.W.3d at 106 ("The mere presence of contaminants [on plaintiff's property] did not reveal whether there was one wrong resulting in continuous damage . . . or continuous or repeated wrongs . . . .").  Because UP did not engage in an affirmative act during the limitations period, the failure to maintain here does not create a fresh injury from day to day.

The City argues that any claim alleging "the failure to maintain real property and appurtenances thereto, must be analyzed under the continuing wrong rule."  This broad application would destroy the statute of limitations, permitting suits indefinitely after a breach.  *See* ***Business Men's Assurance Co. of Am.***, 984 S.W.2d at 507 ("The general purpose of statutes of limitation is to prevent the assertion of stale claims."); ***Baron v. Kurn***, 164 S.W.2d 310, 317 (Mo. 1942) ("It has been often

pointed out that statutes of limitation rest upon reasons of sound public policy in that they . . . compel the settlement of claims within a reasonable period after their origin and while the evidence remains fresh in the memory of the witnesses."); *Smock*, 567 S.W.3d at 228 (declining to apply continuing wrong rule because "allow[ing] the delay would not only undercut the purpose of the statute of limitations but also place an unreasonable burden on [the defendant]").

After the damage was sustained and the City was on notice of an actionable injury, it waited more than five years to sue UP. The continuing wrong rule does not apply here. The City's claim is barred by the five-year statute of limitations. The district court properly entered summary judgment.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____